PRICE, MEESE, SHULMAN & D'ARMINIO, PC
50 Tice Boulevard
Woodcliff Lake, NJ  07677
201-391-3737
*Counsel for Defendant*
*Experian Information Solutions, Inc.*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARC LICHTENSTEIN,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, CHRYSLER CAPITAL LLC, SANTANDER CONSUMER USA, INC.<br><br>　　　　　　　Defendants. | Civil Action No.3:20-cv-06249-MAS-LHG<br><br><br>**DECLARATION OF CYMONE ROGERS IN SUPPORT OF DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT** |

I, Cymone Rogers, hereby make this declaration under penalty of perjury, as follows:

1.　　I am currently a Senior Legal and Compliance Specialist with MyExperian, Inc. ("Experian") and am authorized to make this declaration on Experian's behalf.

2.　　Based upon my experience with Experian, I am familiar with Experian's policies and procedures for the compilation, retention, reinvestigation and disclosure of consumer credit information. The facts set forth herein are based on my personal knowledge, and information available to me in the above referenced capacity.

3.　　Plaintiff Marc Lichtenstein ("Plaintiff") is a "consumer" as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").

4.　　Experian is a "consumer reporting agency" as that term is defined by the FCRA.

1

5. As a consumer reporting agency Experian collects credit information furnished to it by various sources around the country including banks, credit unions, automobile dealers, student loan providers and others (these sources are known as "furnishers of information" within the credit reporting industry and under the FCRA).

6. Experian accepts information on a consumer's credit only from those sources of information that, either on the basis of its prior experience or because of the source's reputation, are determined by Experian to be reasonably reliable.

7. These sources of credit information execute a subscriber agreement, which requires that they will comply with the FCRA, including that they provide only accurate information to Experian and investigate consumer disputes that Experian submits,

8. Chrysler Capitol ("Chrysler") is a "furnisher of information" as that term is defined by the FCRA.

9. Experian's experience with Chrysler is that Chrysler is a reliable source of credit information.

10. Experian maintains reasonable procedures designed to assure that it conducts reasonable reinvestigations of information disputed by consumers.

11. A consumer may contact Experian to dispute information reporting in their credit file by telephone, mail, or the internet.

12. Upon receipt of a dispute, and after locating the consumer's credit file, Experian reviews and considers all relevant information, if any, provided by the consumer and reviews the contents of the consumer's credit file.

13. If Experian is able to make updates based on the information it has, it will do so immediately.

14. If further investigation is required, Experian notifies the data furnisher of the consumer's dispute, describers all relevant information provided by the consumer, and includes the consumer's account information as it then appears in Experian's credit file.

15. Communications between Experian and the data furnisher are generally made through a process where Experian electronically transmits an Automated Consumer Dispute Verification ("ACDV") form to the furnisher. The ACDV process is an industry standard used by all three nationwide CRAs (Trans Union, Experian and Equifax). The ACDV process allows CRAs to communicate with data furnishers through us of any array of pre-determined codes and narrative phrases, along with individualized consumer messages. This process enhances consistency and reduces misunderstandings.

16. When the data furnisher receives the ACDV from Experian, it is required by its contract with Experian and by the FCRA to conduct its own investigation and report the results to Experian.

17. A review of Experian's records reflects that on May 16, 2018, Chrysler began reporting Chrysler Capitol #3000-0212-4991-3100-0 (the "Account") on Plaintiff's Experian credit file.

18. On June 13, 2018, Chrysler reported to Experian that the Account was 30-days-late for the month of May 2018.

19. On November 20, 2018, Chrysler reported to Experian that the Account was 30-days-late for the month of October 2018.

20. On December 12, 2018, Chrysler reported to Experian that the Account was 30-days-late for the month of November 2018.

21. On February 22, 2019, Experian received correspondence from Plaintiff (the "Experian Dispute") stating, in relevant part, "[t]he [Account] is reporting with a late payment. I have not been late in May 2018, this is an error. The first payment was paid at the dealer, then I set up an autopay at the dealer and only when I received a call for not making a payment I realized the autopay was not working." A copy of the correspondence is attached as **Exhibit E.**

22. Plaintiff's Experian Dispute did not state that the October 2018 or November 2018 30-day-late payment notations were inaccurate or request that Experian reinvestigate the accuracy of them.

23. Upon receipt of Plaintiff's Experian Dispute, Experian initiated a reinvestigation – including reviewing Plaintiff's correspondence, reviewing the information in Plaintiff's credit file and initiating an ACDV to be sent to Chrysler, along with a complete copy of Plaintiff's dispute correspondence. A copy of the ACDV is attached as **Exhibit F.**

24. The Experian dispute agent selected the dispute code to be included on the ACDV: "Disputes present/previous Account Status/Payment Rating/Account History. Verify Account Status, Payment Rating and Account History."

25. The Experian ACDV was sent to Chrysler on February 28, 2019, along with a complete copy of Plaintiff's dispute correspondence.

26. On March 4, 2019, Chrysler responded to the Experian ACDV, confirming, in relevant part, that the Account was accurately reporting as 30-days-late for the month of May 2018. See **Exhibit F.**

27. On March 4, 2019 Experian sent its Investigation Results to Plaintiff. Copy of results attached as **Exhibit G.**

4

28.     On March 4, 2019, Experian received a Carbon Copy of the Trans Union ACDV, whereby Chrysler confirmed that the Account was accurately reporting as 30-days-late for the month of May 2018.  Copy of carbon copy results attached **Exhibit H**.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

*Cymone Rogers*

_____

Dated: 9/24/2020

Cymone Rogers
Senior Legal and Compliance Specialist
MyExperian, Inc.